IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-CR-342-WKW |
| | ) | [WO] |
| KYLE GEOFFREY SANDLER | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the court is Defendant Kyle Geoffrey Sandler's emergency motion for compassionate release in which he seeks to modify an imposed term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. # 47; *see also* Doc. # 56.)  He also has twice moved for an immediate adjudication of his motion.  (Docs. # 57, 62.)  The Government opposes the motion for compassionate release.  (Doc. # 51.)  After careful consideration, the court finds that Mr. Sandler's motion (Doc. # 47) is due to be denied.  While Mr. Sandler's motions for immediate adjudication are due to be denied as moot, the court has considered the additional arguments and evidence advanced by those motions.

**I.  BACKGROUND**

From 2015 through 2016, Mr. Sandler defrauded more than seventy victims out of nearly $2 million by convincing them to invest in his new company, Roundhouse, LLC.  He advertised that Roundhouse was a business incubator company that helped new and startup companies by providing services such as

venture capital, office space, 1 gigabit internet, and management training in return for equity from these startup companies.  Mr. Sandler lured his investors into investing in Roundhouse through a series of lies and misrepresentations about his work experience and previous successes as an entrepreneur.  For example, Mr. Sandler repeatedly and falsely represented that he was one of the early employees of Google and that he cashed out of Google with millions of dollars.  He never worked for Google.

Mr. Sandler issued stock certificates to Roundhouse investors totaling a combined equity in Roundhouse far exceeding 100%.  He also failed to disclose to his investors that he was using their funds for his personal expenses, including for childcare services, for rent payments, for automobile purchases, and for other personal needs.  And he did not tell his investors that he had two prior criminal convictions based on fraudulent conduct.

Based on the foregoing criminal activities, on August 22, 2018, Mr. Sandler pleaded guilty to felony charges in a two-count information.  Count one charged wire fraud in violation of 18 U.S.C. § 1343.  Count two charged securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff.

On March 26, 2019, the court sentenced Mr. Sandler to 63 months' imprisonment, which was the bottom of the recommended sentencing guidelines

range, and 36 months' supervised release.  Mr. Sandler also was ordered to pay $1,903,200.00 in restitution.

Mr. Sandler began service of his federal sentence at FPC Montgomery in June 2019.  He requests compassionate release under § 3582(c)(1)(A) because of the current COVID-19 pandemic and his medical conditions.  Mr. Sandler, who is 44 years old, says he was born with a "heart defect (ventricular septal defect)" and that he also suffers from asthma, "insulin dependant [sic] diabetes," "severe hypertension," and "elevated blood sugar."  (Doc. # 47, at 4.)  Based on these medical conditions, Mr. Sandler contends that he is more vulnerable to becoming seriously ill should he contract COVID-19.

## II.  STANDARD OF REVIEW

> Section 3582, as amended by the First Step Act, states that courts generally cannot alter or modify a term of imprisonment after imposition, but the court can reduce an inmate's term of imprisonment upon a motion for sentence modification from the Bureau of Prisons or from a prisoner, where the prisoner has exhausted administrative remedies.  18 U.S.C. § 3582(c)(1)(A). . . .
>
> Relevant to this case, the court can grant a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  Before granting a sentence reduction, the court must consider the factors in § 3553(a), if applicable, and determine whether they support a reduction.  18 U.S.C. § 3582(c)(1)(A).  In general, the defendant has the burden to show circumstances meeting the test for a reduction of sentence.  *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also United States v. Heromin*, 2019 U.S.

Dist. LEXIS 96520, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (applying this burden of proof after the implementation of the First Step Act).

*United States v. Mollica*, No. 2:14-CR-329-KOB, 2020 WL 1914956, at *2 (N.D. Ala. Apr. 20, 2020).

## III.  DISCUSSION

**A.  The Government has forfeited any objection that Mr. Sandler failed to exhaust all administrative rights to appeal.**

The First Step Act of 2018, Pub. L. No. 115-391, modified § 3582(c)(1)(A) to allow a defendant to move a federal district court for compassionate release, but only "after [the defendant] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  § 3582(c)(1)(A).  Exhaustion is a "mandatory condition." *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).  But because it is not a jurisdictional requirement, the Government can waive or forfeit a challenge to exhaustion.  *See id.* at 833, 834; *see also Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited.").  "[F]orfeiture is the failure to make the timely assertion of a right," while "waiver is the intentional

relinquishment or abandonment of a known right." *Hamer*, 138 S. Ct. at 17 n.1 (citation and internal quotation marks).

The Bureau of Prisons (BOP) has not moved for compassionate release on Mr. Sandler's behalf. Mr. Sandler contends, though, that he exhausted all administrative rights to appeal with the BOP. (Doc. # 56-1; *see also* Doc. # 47-1.) The Government has not challenged Mr. Sandler's assertions or raised failure to exhaust as a basis for denying Mr. Sandler's motion. It has instead refuted only the merits of Mr. Sandler's motion for compassionate release. On the basis of the Government's silence and its failure to invoke enforcement of § 3582(c)(1)(A)'s exhaustion requirement in favor of a merits review, the court proceeds to the merits of Mr. Sandler's motion.

## B. Mr. Sandler has not demonstrated "extraordinary and compelling reasons" warranting a sentence reduction.

Convicted defendants who are incarcerated may request compassionate release for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i). The defendant "bears the burden of establishing that compassionate release is warranted." *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *United States v. Hamilton*, 715 F.3d 328, 341 (11th Cir. 2013)).

> As to precisely what reasons meet the threshold under § 3582(c)(1)(A)(i),
>
> Congress has never defined "extraordinary and compelling" in the compassionate release context and instead directed the United States Sentencing Commission to describe which circumstances qualify. *See* 28 U.S.C. § 994(t). The "applicable policy statement" with which relief under § 3582(c)(1)(A) must be consistent is U.S.S.G. § 1B1.13 cmt. n.1. In that policy statement, the Sentencing Commission provides three types of specific circumstances that would entitle a defendant to relief: (A) a medical condition of the defendant substantially reduces his ability to provide self-care in prison, (B) the advanced age of the defendant, and (C) the defendant's family circumstances. In apparent acknowledgment that the three enumerated circumstances would not capture all situations where compassionate release is appropriate, the Commission also included a 'catchall' provision where the Director of the BOP finds "other reasons" exist that are "extraordinary and compelling." U.S.S.G. § 1B1.13 cmt. n.1(D).

*United States v. McCall*, No. 2:18-cr-95-MHT, 2020 U.S. Dist. LEXIS 102095, at *5–6 (M.D. Ala. June 4, 2020). The catchall provision gives authority to the BOP, rather than to the courts, to determine whether non-enumerated reasons may warrant release. However, this provision has not been updated since the passage of the First Step Act, which expanded § 3582(c)(1)(A) to permit prisoners to bring motions on their own behalf. *See id.* at *6–7.

The questions of whether potential COVID-19 exposure may, under some circumstances, present an extraordinary and compelling reason to grant release and whether the catchall provision still limits the court's authority in light of its inconsistency with subsequent statutory amendments need not be decided at present.

Even if both questions were answered in Mr. Sandler's favor, his motion would still be denied.

Mr. Sandler has submitted BOP medical records documenting that he has asthma, Type 1 diabetes, and essential (primary) hypertension, and that "renal insufficiency is seen on kidney function labs." (Doc. # 56-1.)  As to the latter condition, Mr. Sandler states that in March 2020, a local hospital performed an ultrasound on his kidney but that he had not (as of May 20, 2020) been informed of the results of the ultrasound.  (Doc. # 56, at 6.)  Mr. Sandler also represents that he was "born with a heart defect (ventricular septal defect)," which required open heart surgery.  (Doc. # 47, at 4.)  He asserts that, if released, he can obtain private insurance and different prescriptions for his medical conditions and that he can eat a healthier diet of fresh salads and fresh fish, which he says is not available at the BOP.  (Doc. # 56, at 6; *see also* Doc. # 47, at 5.)

The Centers for Disease Control and Prevention (CDC) has identified serious heart conditions (such as heart failure, coronary artery disease, or cardiomyopathies) as health conditions that increase one's risk for severe illness from COVID-19.  And it has identified asthma (moderate to severe), hypertension, and type 1 diabetes as health conditions that might increase one's risk of severe illness from COVID-19. *See* CDC, Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-

extra-precautions/people-with-medical-conditions.html? (last visited July 2, 2020). The Government concedes that Mr. Sandler "has asserted medical conditions that, depending on severity, may put him at higher risk for severe illness from COVID-19." (Doc. # 51, at 10.) But that does not end the inquiry.

The court "do[es] not dismiss the risk of harm that COVID-19 poses to everyone, including the inmates at" FPC Montgomery. *Swain v. Junior*, 958 F.3d 1081, 1090 (11th Cir. 2020) (alteration added). But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The court also is sympathetic to the fact that Mr. Sandler appears to have qualifying medical conditions that place him at a greater risk to suffer adverse effects should he contract COVID-19. However, as of the date of this order, the BOP reports that no inmate has tested positive for the COVID-19 virus at FPC Montgomery and that two staff members have recovered from COVID-19. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (select "Full breakdown and additional details") (last visited July 2, 2020). There is no evidence or argument that Mr. Sandler has had direct or indirect exposure to COVID-19 while incarcerated at FPC Montgomery.

Moreover, Mr. Sandler has not contended that the BOP is failing to attend to his medical needs. To the contrary, he states: "I don't want to suggest that I haven't been getting care here, because I have and I am thankful to the hard working people in our medical department . . . ." (Doc. # 56-1, at 3.) Mr. Sandler's BOP records reveal that his medical conditions have been diagnosed and are being treated and managed in custody with prescription drugs and monitoring, albeit not precisely in the way Mr. Sandler desires. (Doc. # 56-1.) And, although Mr. Sandler is not satisfied with the food selection, he presents no evidence from a medical provider that FPC Montgomery is unable to satisfy his dietary needs for self-care of his medical conditions. *See United States v. Bueno-Sierra*, No. 93-CR-00567, 2020 WL 2526501, at *5 (S.D. Fla. May 17, 2020) ("The Sentencing Guidelines state that 'extraordinary and compelling reasons' require not only a serious medical condition, but also the inability of the defendant to 'provide self-care' within the correctional facility. Without his medical provider corroborating either of these requirements, [the defendant] has not shown a foundation for compassionate release . . . ."); *United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019) (denying compassionate release and noting that "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release"). Also noteworthy, Mr. Sandler represents that he is classified as a Care Level 2 inmate (Doc. # 47, at 4), meaning, according to the BOP, that he is a "'stable

9

outpatient[]'" with medical conditions that "can be managed through routine, regularly scheduled appointments with clinicians for monitoring." (Doc. # 51, at 10 n.5 (quoting *Care Level Classification for Medical & Mental Health Conditions or Disabilities, Federal Bureau of Prisons Clinical Guidance*, May 2019, at 2, available at https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf.).) Mr. Sandler has not demonstrated that the BOP is failing to provide him routine, regularly scheduled appointments with medical personnel to monitor and treat his conditions.

Based on the foregoing, the court finds that Mr. Sandler has not shown "extraordinary and compelling reasons" warranting his early release from prison. § 3582(c)(1)(A).

**C.    The 18 U.S.C. § 3553(a) factors do not warrant granting Mr. Sandler an early release from prison.**

"[Section] 3582 requires that a court contemplating a sentence reduction consider the § 3553(a) factors where applicable." *Mollica*, 2020 WL 2811504, at *2 (citing § 3582(c)(1)(A)); *see also* 18 U.S.C. § 3553(a). While Mr. Sandler is to be commended for the steps he has taken to better himself in prison (*see, e.g.*, Doc. # 47, at 3–4), release from prison under § 3582(c)(1)(A) is not warranted in light of the § 3553(a) factors.

10

First, as already discussed, Mr. Sandler has not demonstrated that the medical staff at FPC Montgomery is unable to provide him adequate medical care for his diagnosed conditions. *See United States v. Sanchez*, No. 2:17CR337-MHT, 2020 WL 3013515, at *1 (M.D. Ala. June 4, 2020) (denying a motion for compassionate release to an inmate at FPC Montgomery in part based on the § 3553(a) factors and the absence of evidence "that the prison is unable to meet [the inmate's] medical needs").

Second, the nature and circumstances of Mr. Sandler's offenses and his history and characteristics do not favor release. *See* § 3553(a)(1). The multiple offenses underlying Mr. Sandler's convictions are serious crimes that financially and emotionally damaged the lives of dozens of individuals. (*See* Presentence Investigation Report (PSR), at 9–10 (Doc. # 42) (Victim Impact Statements) (Mr. Sandler "used [my $22,500] for his own expense"; "His lies are convincing."; "I have experienced a loss of investment funds for my retirement . . . ."; "The loss of money created anxiety and reduced [my] trust in capital markets."; "Being a victim has lowered my bar of trust in any opportunity to invest. Much like being raped or broken into and being very vulnerable."; "We lost not only the $30,000, but the potential income that $30,000 would have generated in our retirement account . . . ."; Mr. Sandler "hurt us financially and emotionally."').) For his crimes, to date, Mr. Sandler has served only a third of his sentence. *See Sanchez*, 2020 WL 3013515,

11

at *1 (holding that under § 3553(a) the fact that the defendant had "committed a serious crime" for which he "ha[d] served only small percentage of his 145-month sentence" weighed against a compassionate release under § 3582(c)(1)(A)). And Mr. Sandler's convictions in this case are not his first fraud-related convictions. (*See* PSR ¶ 54.)

Third, under § 3553(a)(2), Mr. Sandler's release at this time would undercut the gravity of his offenses, would diminish public respect for the law, and would fail to protect the public from additional crimes of Mr. Sandler. Overall, the balancing of the § 3553(a) factors does not justify Mr. Sandler's release.

## IV. CONCLUSION

Mr. Sandler has failed to demonstrate "extraordinary and compelling reasons" under § 3582(c)(1)(A) to support his early release from prison. Additionally, the § 3553(a) factors weigh against his early release. Accordingly, it is ORDERED that Mr. Sandler's motion (Doc. # 47) is DENIED. It is further ORDERED that Mr. Sandler's motions for immediate adjudication (Docs. # 57, 61) are DENIED as moot.

DONE this 2nd day of July, 2020.

                                /s/ W. Keith Watkins
                         UNITED STATES DISTRICT JUDGE