IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CR-342-WKW |
| | ) | [WO] |
| KYLE GEOFFREY SANDLER | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

In March 2019, Defendant Kyle Geoffrey Sandler was convicted on his guilty plea to one count of wire fraud in violation of 18 U.S.C. § 1343 and two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff. Based on these convictions, Defendant was sentenced to 63 months' imprisonment and 3 years' supervised release. He also was ordered to pay $1,903,200 in restitution. Defendant's projected release date is December 11, 2023. *See* Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 19, 2021).

Before the court is Defendant's third *pro se* motion for compassionate release (Doc. # 71), in which Defendant seeks to modify an imposed term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government filed a response in

opposition (Doc. # 66) to which Defendant filed a reply and supplemental reply briefs (Docs. # 77, 78). For the reasons to follow, the motion is due to be denied.[1]

## II. DISCUSSION

"[C]ourts are generally forbidden from altering a sentence once it becomes final." *United States v. Bryant*, 996 F.3d 1243, 1251 (11th Cir. 2021), *petition for cert. filed*, No. 20-1732 (U.S. June 15, 2021). Section 3582(c)(1)(A)(i), as amended by the First Step Act, offers courts a narrow reprieve to reduce a sentence for "extraordinary and compelling reasons." It provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court . . . upon motion of the defendant . . . may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(1)(A)(i) (citing 18 U.S.C. § 3553(a)).

Earlier this year, the Eleventh Circuit held in *Bryant* that U.S.S.G. § 1B1.13 "is an applicable policy statement that governs all motions under Section 3582(c)(1)(A)," including those filed by inmates, and thus "district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13." 996 F.3d at 1262. Section 1B1.13 requires a judicial determination that "the defendant is

---

[1] Defendant's prior two motions for compassionate release also were denied. (*See* Docs. # 62, 70.)

not a danger to the safety of any other person or to the community." § 1B1.13(2). It also delineates four categories that constitute "extraordinary and compelling reasons" for compassionate release: (A) a defendant's medical condition, which includes, among other conditions, a "serious physical or medical condition"; (B) a defendant's age; (C) a defendant's family circumstances; and (D) "other reasons . . . [a]s determined by the Director of the Bureau of Prisons." § 1B1.13, cmt. n.1(A)–(D). Importantly, as pronounced in *Bryant*, application note 1(D), which is the catch-all provision, "does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." *Bryant*, 996 F.3d at 1248; *see also id.* at 1262–65. That discretion lies only with the Bureau of Prisons ("BOP"). Hence, application notes 1(A), (B), and (C) to § 1B1.13 constrain district courts in determining whether a defendant has established extraordinary and compelling reasons justifying compassionate release.

In *United States v. Tinker*, the Eleventh Circuit succinctly summarized what § 3582(c)(1)(A) requires:

> [B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are "extraordinary and compelling reasons" for doing so, and, as relevant here, (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement.

No. 20-14474, 2021 WL 4434621, at *2 (11th Cir. Sept. 28, 2021). *Tinker* held that district courts can examine these three conditions in any order it chooses. *Id.* If even one of § 3582(c)(1)(A)'s conditions is rejected, then a defendant is not entitled to a

3

sentence reduction.  *Id.*  The defendant bears the "burden to establish that he qualifie[s] for compassionate release."  *United States v. Smith*, 856 F. App'x 804, 806 (11th Cir. 2021) (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)).

Defendant has not shown extraordinary and compelling reasons under § 3582(c)(1)(A), and the § 3553(a) factors weigh against his compassionate release.  He, thus, is not entitled to compassionate release.

A. **Extraordinary and Compelling Reasons**

Defendant argues that his medical conditions—hypertension, a ventricular septal defect, moderate-to-severe asthma, insulin-dependent diabetes, and chronic kidney failure—demonstrate his susceptibility to severe illness if he contracts COVID-19 and, thus, are extraordinary and compelling reasons for compassionate release.  The Centers for Disease Control and Prevention ("CDC") has determined that moderate-to-severe asthma, diabetes, and chronic kidney disease "can make [a person] more likely to get severely ill from COVID-19."  CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 19, 2021).  Under § 1B1.13, a serious medical condition can qualify as an extraordinary and compelling reason for compassionate release, *see* § 1B1.13 cmt. n.1(A)(ii)(I), but only where that condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and is one "from which [the inmate] is not expected to recover," § 1B1.13 cmt. n.1(A).

Here, Defendant understandably is concerned about the risks COVID-19 pose to him.[2] However, Defendant has submitted no evidence that his ability to provide self-care at his designated prison camp is inhibited, much less substantially diminished. He also has not submitted any evidence that the medical personnel at his designated federal correctional institution is unable to provide adequate treatment for his health conditions. *See* § 3553(a)(2)(D); *see also United States v. Sanchez*, No. 2:17CR337-MHT, 2020 WL 3013515, at *1 (M.D. Ala. June 4, 2020) (denying an inmate's motion for compassionate release in part based on the absence of evidence "that the prison is unable to meet [the inmate's] medical needs" (citing § 3553(a)(2)(D))). On this record,

---

[2] Fortunately, there is some positive news at the BOP on the fight against COVID-19. First, according to the BOP's website, the camp where Defendant is incarcerated—Federal Prison Camp Montgomery ("FPC Montgomery")—has no active COVID-19 cases among its inmates and just one active case among its staff. *See* BOP Covid-19 Cases, available at https://www.bop.gov/ coronavirus/index.jsp (last visited Oct. 19, 2021). This is a marked improvement. *See id.* Second, the BOP has administered 233,200 doses of the COVID-19 vaccine to its approximate 36,000 staff and to its inmates, which as of October 14, 2021's count was 156,675. *See* BOP Covid-19 Vaccine Implementation, available at https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 19, 2021); BOP Statistics, https://www.bop.gov/about/statistics/population_statistics.jsp (providing that inmate statistics are updated each Thursday) (last visited Oct. 19, 2021).

While Defendant has not indicated whether he has received a COVID-19 vaccine, it appears to be readily available at FPC Montgomery. The BOP's website indicates that, since the COVID-19 vaccine was introduced, 65 staff members and 354 inmates have received both doses of the vaccine at FPC Montgomery and, thus, have been fully inoculated. *See* BOP COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 19, 2021). The BOP reports that currently there are 303 inmates at FPC Montgomery; the ebb and flow of inmates account for the discrepancy between the number of inmates vaccinated while housed at FPC Montgomery and the total inmate population at FPC Montgomery as of today. *See* BOP FPC Montgomery, https://www.bop.gov/ locations/institutions/mon/ (last visited Oct. 19, 2021). It is clear from these statistics that the vaccination rate at FPC Montgomery exceeds that of the general population in the state of Alabama.

his medical conditions are insufficient to rise to the level of extraordinary and compelling reasons.

Additionally, Defendant espouses a general fear of contracting COVID-19 while incarcerated. However, this also is not an extraordinary and compelling reason under § 3582(c)(1)(A)(i). *See generally United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Gordon*, No. CR 11-20752, 2020 WL 4381948, at *4 (E.D. Mich. July 31, 2020) ("A generalized risk of contracting COVID-19, or potentially developing the more severe symptoms associated with it, are not the type of 'extraordinary and compelling reasons' that justify compassionate release.").

**B.     The § 3553(a) Factors**

The § 3553(a) factors, considered in light of Defendant's "current circumstances" and "his circumstances at the time of his original sentencing," do not warrant early release. *United States v. Groover*, 844 F. App'x 185, 188 (11th Cir. 2021); *see also United States v. Rind*, 837 F. App'x 740, 744 (11th Cir. 2020) (observing that, under § 3553(a), the defendant's "medical conditions . . . are part of his history and characteristics"). To begin on a positive note, Defendant is to be commended for the extraordinary steps he represents that he has taken while

incarcerated to better himself. (*See* Doc. # 71, at 7–8.) He is encouraged to continue these efforts. His representations, though, omit mention of three infractions for which he was disciplined in November 2020, March 2021, and June 2021. (*See* Ct's Ex. A.) In addition to these rehabilitative efforts and the infractions, the court also considered Defendant's proposed post-release plans (*see* Doc. # 78, at 1), and the risks that COVID-19 pose to Defendant's health based on his medical conditions. However, as to the latter, his failure to demonstrate that the medical care he has received is inadequate and the BOP's efforts to vaccinate its inmates and staff mitigate the severity of harm that he faces from COVID-19.

Furthermore, the nature and circumstances of Defendant's offenses and his history and characteristics that gave rise to his convictions for those offenses do not favor release.[3] *See* § 3553(a)(1). Namely, Defendant was convicted in this court of serious financial crimes that reaped economic havoc and emotional damage to the lives of dozens of individuals. (*See* Presentence Investigation Report ("PSR"), at 9–10 (Doc. # 42) (Victim Impact Statements) (Defendant "used [my $22,500] for his own expense"; "His lies are convincing."; "I have experienced a loss of investment funds for my retirement . . . ."; "The loss of money created anxiety and reduced [my] trust in capital markets."; "Being a victim has lowered my bar of trust in any opportunity to invest. Much like being raped or broken into and being very vulnerable."; "We lost

---

[3] His conduct is set out in the PSR and in the court's prior order denying Defendant's motion for compassionate release. (Docs. # 42, 62.)

7

not only the $30,000, but the potential income that $30,000 would have generated in our retirement account. . . ."; Mr. Sandler "hurt us financially and emotionally."').) Furthermore, Defendant's release at the juncture would undercut the gravity of his offenses, diminish public respect for the law, negate the deterrent value of punishment, and fail to protect the public from additional crimes of Defendant.  *See* § 3553(a)(2). The balancing of the § 3553(a) factors does not justify Defendant's early release.

**C.     Conclusion**

Defendant has not shown extraordinary and compelling reasons under § 3582(c)(1)(A)(i), and the § 3553(a) factors weigh against his compassionate release. He, thus, is not entitled to compassionate release.

### III.  ORDER

For the foregoing reasons, it is ORDERED that Defendant's third *pro se* motion for compassionate release (Doc. # 71) is DENIED.

DONE this 19th day of October, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

```
USPGD            *       INMATE DISCIPLINE DATA            *      10-15-2021
PAGE 001         *    CHRONOLOGICAL DISCIPLINARY RECORD    *      11:47:45


REGISTER NO: 17620-002 NAME..: SANDLER, KYLE GEOFFREY
FUNCTION...: DIS      FORMAT: CHRONO     LIMIT TO ___ MOS PRIOR TO 10-15-2021
                      RSP OF: CMY-MONTGOMERY CCM

------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3510497 - SANCTIONED  INCIDENT DATE/TIME: 06-02-2021 2040
UDC HEARING DATE/TIME: 06-08-2021 1424
FACL/UDC/CHAIRPERSON.: MON/MOBILE/S. BURNS
REPORT REMARKS.......: INMATE SANDLER SANCTIONED FOR VOILATING CODES 316 AND
                       332
   316  BEING IN UNAUTHORIZED AREA - FREQ: 1
        LP COMM    / 180 DAYS / CC
                   FROM: 06-09-2021  THRU: 12-05-2021
        COMP:    LAW:    180 DAYS LOSS OF COMMISSARY FROM 06-09-2021 TO
                         12-05-2021 TO DETER FUTURE MISCONDUCT




G0002           MORE PAGES TO FOLLOW . . .
```

Court's Ex. A

```
 USPGD          *        INMATE DISCIPLINE DATA        *       10-15-2021
PAGE 002        *     CHRONOLOGICAL DISCIPLINARY RECORD *      11:47:45


REGISTER NO: 17620-002  NAME..: SANDLER, KYLE GEOFFREY
FUNCTION...: DIS     FORMAT: CHRONO     LIMIT TO ___ MOS PRIOR TO 10-15-2021
                     RSP OF: CMY-MONTGOMERY CCM


UDC HEARING DATE/TIME: 06-08-2021 1424 REPORT 3510497 CONTINUED
        LP EMAIL   / 180 DAYS / CC
                  FROM: 06-09-2021  THRU: 12-05-2021
        COMP:   LAW:    180 DAYS LOSS OF EMAIL FROM 06-09-2021 TO
                        12-05-2021 TO DETER FUTURE MISCONDUCT
   332  SMOKING IN UNAUTHORIZED AREA - FREQ: 1
        LP PHONE   / 180 DAYS / CC
                  FROM: 06-09-2021  THRU: 12-05-2021
        COMP:   LAW:    180 DAYS LOSS OF TELEPHONE FROM 06-09-2021 TO
                        12-05-2021 TO DETER FUTURE MISCONDUCT




G0002          MORE PAGES TO FOLLOW . . .
```

```
USPGD            *        INMATE DISCIPLINE DATA           *      10-15-2021
PAGE 003         *     CHRONOLOGICAL DISCIPLINARY RECORD   *      11:47:45


REGISTER NO: 17620-002 NAME..: SANDLER, KYLE GEOFFREY
FUNCTION...: DIS    FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 10-15-2021
                    RSP OF: CMY-MONTGOMERY CCM

-----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3486570 - SANCTIONED  INCIDENT DATE/TIME: 03-23-2021 1115
UDC HEARING DATE/TIME: 03-25-2021 0915
FACL/UDC/CHAIRPERSON.: MON/MOBILE/W.STOUDEMI
APPEAL CASE NUMBER(S): 1075018
REPORT REMARKS.......: INMATE SANDLER SANCTIONED FOR VOILATING CODES 305 AND
                       328
   305   POSSESSING UNAUTHORIZED ITEM - FREQ: 1
       LP EMAIL    / 30 DAYS / CS
                 FROM: 03-29-2021  THRU: 04-27-2021
       COMP:    LAW:     30 DAYS LOSS OF EMAIL FROM 03-29-2021 TO
                         04-27-2021 TO DETER FUTURE MISCONDUCT




G0002        MORE PAGES TO FOLLOW . . .
```

```
     USPGD          *         INMATE DISCIPLINE DATA         *      10-15-2021
   PAGE 004         *      CHRONOLOGICAL DISCIPLINARY RECORD  *      11:47:45


REGISTER NO: 17620-002 NAME..: SANDLER, KYLE GEOFFREY
FUNCTION...: DIS     FORMAT: CHRONO    LIMIT TO      MOS PRIOR TO 10-15-2021
                     RSP OF: CMY-MONTGOMERY CCM


UDC HEARING DATE/TIME: 03-25-2021 0915 REPORT 3486570 CONTINUED
   328   GIVING/ACCEPTNG MONEY W/O AUTH - FREQ: 1
      LP VISIT    / 30 DAYS / CS
               FROM: 03-29-2021  THRU: 04-27-2021
         COMP:    LAW:     30 DAYS LOSS OF VISIT FROM 03-29-2021 TO
                           04-27-2021 TO DETER FUTURE MISCONDUCT
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3449485 - SANCTIONED INCIDENT DATE/TIME: 11-12-2020 0935
UDC HEARING DATE/TIME: 11-18-2020 1355
FACL/UDC/CHAIRPERSON.: MON/MOBILE/HOLLENQUES
REPORT REMARKS.......: INMATE ADMITTED TO THE CHARGE.




G0002       MORE PAGES TO FOLLOW . . .
```

```
 USPGD              *       INMATE DISCIPLINE DATA        *      10-15-2021
PAGE 005 OF 005  *    CHRONOLOGICAL DISCIPLINARY RECORD   *       11:47:45


REGISTER NO: 17620-002 NAME..: SANDLER, KYLE GEOFFREY
FUNCTION...: DIS     FORMAT: CHRONO    LIMIT TO      MOS PRIOR TO 10-15-2021
                     RSP OF: CMY-MONTGOMERY CCM


UDC HEARING DATE/TIME: 11-18-2020 1355 REPORT 3449485 CONTINUED
    316  BEING IN UNAUTHORIZED AREA - FREQ: 1
         LP COMM    / 15 DAYS / CC
                    FROM: 11-19-2020  THRU: 12-03-2020
         COMP:    LAW:    LOSS OF COMMISSARY PRIVILEGES
         LP PHONE   / 15 DAYS / CC
                    FROM: 11-19-2020  THRU: 12-03-2020
         COMP:    LAW:    LOSS OF EMAIL PRIVILEGES




G0005          TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```